```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON
```

**DAVID VICKERS,**

    **Plaintiff,**

v.                                                CASE NO. 2:04-cv-00912

**JO ANNE BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**


## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, David Vickers (hereinafter referred to as "Claimant"), filed an application for DIB on April 17, 2002, alleging disability as of May 19, 2001, due to a lower back impairment. (Tr. at 117-19, 141.) The claim was denied initially and upon reconsideration. (Tr. at 81-84, 86-87.) On December 27, 2002, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 88.) The hearing was held on December 16,

2003, before the Honorable Theodore Burock. (Tr. at 360-92.) By decision dated February 20, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 30-41.) On July 10, 2004, the Appeals Council indicated it had considered new evidence offered by the Claimant, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 5-8.) On August 24, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment

meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 31.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease of the

3

lumbar spine, hypertension associated with headaches, cervical sprain, carpal tunnel syndrome and chronic obstructive pulmonary disease. (Tr. at 33.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 33.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 37.) As a result, Claimant cannot return to his past relevant work. (Tr. at 38.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as cashier, security guard, quality controller and dispatcher, which exist in significant numbers in the national economy. (Tr. at 39.) On this basis, benefits were denied. (Tr. at 39.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was fifty years old at the time of the administrative hearing. (Tr. at 363.) Claimant completed the tenth grade. (Tr. at 365.) In the past, he worked in the coal mines as a roof bolter. (Tr. at 387.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

<u>Evidence before the ALJ</u>

On November 13, 2003, Lisa Goudy, M.S. conducted a vocational assessment at the request of Claimant's counsel. She opined that considering Claimant's "limitations and symptoms resulting from his medical conditions, this Consultant is unable to identify any substantial, gainful employment in which he could participate on a sustained, competitive basis. The medical records indicate that

5

Mr. Vickers is totally disabled and his total disability has lasted for at least a 12 month continuous period and is ongoing." (Tr. at 192.)

Maureen Miller, M.S. conducted a functional capacity evaluation on March 8, 2002. Claimant was functioning in the sedentary physical demand level. Ms. Miller found minimal symptom magnification. Claimant's validity criteria score was 79%, which indicated a fair effort. (Tr. at 196-200.)

The record includes treatment notes from Francis M. Saldanha, M.D. dated December 19, 2001, through March 21, 2002. Claimant had been injured on the job in May, 2001. On December 19, 2001, Dr. Saldanha noted that Claimant's TENS unit gave him some relief, as did medication and stretching. Dr. Saldanha noted that physical therapy was not successful. Claimant had mild to moderate tenderness in the cervical and lumbosacral spine. Straight leg raising was negative. The neurological examination was normal. Dr. Saldanha diagnosed lumbar facet arthropathy and strain with radiculitis and recommended injections. Claimant had three mildly positive Waddell signs on physical examination. (Tr. at 210-11.) On March 21, 2002, Claimant reported that the injections had not helped. Dr. Saldanha noted that Claimant had three strongly positive Waddell's signs and negative straight leg raising. Claimant's reflexes were normal in his upper and lower extremities and his motor strength was 5/5 without gross neurosensory deficits.

6

Dr. Saldanha diagnosed lumbar facet arthropathy with ill-defined radiculitis. He noted that an MRI revealed diffused disc bulging at L4-5 and L5-S1, without evidence of herniation and that he has been told he is not a surgical candidate. Dr. Saldanha concluded that Claimant had reached maximum medical improvement. (Tr. at 202-03.)

Claimant underwent a functional capacity evaluation on April 22, 2002. Bobbi Jo Chapman, OTR/L noted that Claimant was unable to complete all activities due to pain. Waddell's testing was positive at 4/5 and suggested Claimant may have exhibited symptom magnifying behaviors. Seventy-nine percent of Claimant's measures were valid. His static lift tests were invalid and, therefore, it was impossible to arrive at a completely accurate description of his capabilities. Some testing placed Claimant in the sedentary-light range, but Claimant did not demonstrate a maximal physical demand level. (Tr. at 220-23.)

On June 4, 2002, a State agency physician opined that Claimant could perform light work, reduced by nonexertional limitations. (Tr. at 224-31.)

The record includes treatment notes and other evidence from John Cook, D.O. dated October 16, 2000, through July 15, 2002. On October 16, 2000, Dr. Cook diagnosed COPD and exertional dyspnea. (Tr. at 254.) On May 24, 2001, Claimant complained of a lower back injury at work. Dr. Cook diagnosed acute lumbar strain and left

sciatica.  (Tr. at 253.)  On June 7, 2001, Claimant had tenderness and muscle spasm.  Dr. Cook diagnosed acute lumbar strain without herniated disc and left sciatica.  (Tr. at 252.)  An MRI on June 16, 2001, showed diffuse disc bulging at L4-L5 and L5-S1, but there was no herniation.  (Tr. at 260.)  On June 26, 2001, Claimant had tenderness, muscle spasm and positive straight leg raising.  Dr. Cook diagnosed lumbar strain and disc bulges times two, facet arthropathy and left sciatica.  (Tr. at 251.)  On August 24, 2001, Dr. Cook diagnosed facet arthropathy, lumbar strain and lumbago.  (Tr. at 247-48.)   On September 24, 2001, Dr. Cook diagnosed lumbago, lumbar strain and facet arthropathy.  (Tr. at 247.)  Dr. Cook noted back tenderness and muscle spasm. Sensation was intact.  (Tr. at 246.)   EEG studies on November 23, 2001, showed no acute radiculopathy or nerve injury.  (Tr. at 258.)  On December 17, 2001, Claimant had tenderness and muscle spasm.  Claimant had good muscle strength.  (Tr. at 244.)

On May 20, 2002, Dr. Cook completed an Agency Reporting Form, Physical, on which he opined that Claimant had abnormal range of motion, gait and station, sensory deficits and motor strength and coordination.  He also stated that Claimant had dyspnea with exertion and atypical chest pain.  He opined that Claimant was capable of light/sedentary work based on a recent functional capacity evaluation and that he was a poor candidate for vocational rehabilitation due to age, education level and work experience.

8

(Tr. at 235-37.)

On June 13, 2002, Dr. Cook noted that Claimant's condition was worse.  Dr. Cook noted paravertebral muscle spasm.  Straight leg raising was positive at zero degrees on the right and five degrees on the left.  Claimant had limited range of motion in the cervical spine.  Claimant had good muscle strength upon Plantar flexion/extension.  (Tr. at 234.)  Dr. Cook diagnosed cervical, lumbar and thoracic strain, facet arthropathy and lumbar radiculitis.  (Tr. at 234.)  An MRI on July 2, 2002, showed a very small central disc bulge at L4-5 with associated degenerative changes, degenerative changes at L5-S1 and no evidence of focal disc herniation or spinal canal stenosis.  (Tr. at 255.)

On October 29, 2002, a State agency medical source opined that Claimant was capable of light work, reduced by nonexertional limitations.  (Tr. at 268-75.)

Diane Shafer, M.D. completed a Medical Assessment Form on January 15, 2003.  She opined that Claimant could lift up to ten pounds occasionally, with occasional postural limitations and several environmental limitations.  She opined that Claimant could sit, stand or walk two hours in an eight-hour day.  She opined that Claimant was permanently disabled.  (Tr. at 277-79.)

Clifford Carlson, M.D. examined Claimant on October 3, 2003, at the request of Claimant's counsel.  Dr. Carlson had seen Claimant once before on October 22, 2002.  Motor strength was

intact in the upper extremities. Sensory examination revealed decreased touch and pin prick for the left upper extremity. There was decreased vibration sense on the left and proprioception was intact. Deep tendon reflexes were one plus. In the lower extremities, motor strength was intact. There was decreased touch throughout the left lower extremity and decreased pin sensation for the right thigh and left calf. There was decreased vibration sense on the left and proprioception was intact. Deep tendon reflexes were two plus at the knees and one plus at the ankles and toes. (Tr. at 283.) Dr. Carlson opined that Claimant suffers from a number of impairments and that, as a result, Claimant was not capable of performing sedentary work on a sustained basis. Thus, by virtue of his age, education, intellect and physical and mental impairments, Claimant was permanently disabled. (Tr. at 285.)

On December 3, 2003, Dr. Shafer provided a statement of Claimant's impairments and limitations and stated that she agreed with Ms. Goudy's report. (Tr. at 289.)

The record includes treatment notes from Dr. Shafer dated September 17, 2002, through December 15, 2003. (Tr. at 305-19.) Dr. Shafer generally treated Claimant for lumbar sprain and strain, as well as carpal tunnel syndrome. (Tr. at 317.)

<u>Evidence before the Appeals Council</u>

On May 19, 2001, x-rays showed mild degenerative changes with narrowing of L4-5 and L5-S1 disc space. (Tr. at 332.)

The record includes a statement from Dr. Shafer dated March 19, 2004. Dr. Shafer had last seen Claimant on March 25, 2004. Dr. Shafer stated that Claimant is not a malingerer and that his pain and other limitations preclude even sedentary work on a sustained basis. Dr. Shafer points to Claimant's MRI on July 2, 2002. (Tr. at 356.)

Claimant also submitted an affidavit dated April 15, 2004, in which he takes issue with the ALJ's credibility findings. (Tr. at 358-59.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in his pain and credibility analysis. In particular, Claimant argues that the ALJ erred in the weight afforded various medical opinions of record who opined that Claimant was capable of sedentary work or less. According to the Claimant, if he is capable of sedentary work, at age fifty, he meets the Medical-Vocational Guidelines, Rule 201.09. In addition, Claimant argues that the Appeals Council erred in finding that the new evidence from Dr. Shafer and others did not provide a basis for changing the ALJ's decision. (Pl.'s Br. at 8-12.)

The Commissioner argues that substantial evidence supports the ALJ's residual functional capacity finding. The Commissioner further asserts that the ALJ properly weighed the evidence of

record from various medical sources. (Def.'s Br. at 13-20.)

In his decision, the ALJ acknowledged Claimant's testimony that he suffers from constant pain in his neck, hands and lower back that radiates into his legs and feet. The ALJ noted Claimant's daily activities, including his ability to care for his own personal needs, watch television, read, listen to the radio, walk in the yard, do laundry, dust furniture, take out the trash and shop. Regarding precipitating and aggravating factors, Claimant stated that bending, standing, walking, pushing, pulling and sitting aggravate his pain. The ALJ further noted that Claimant reported problems with concentration due to pain. Claimant reported no side effects from his prescribed medications. Claimant stated he had undergone facet injections and that he uses a cane, a TENS unit and a back brace. (Tr. at 34-35.)

Upon consideration of these factors, the ALJ found that Claimant's testimony of disabling pain was not entirely credible. The ALJ relied on what he called an "unremarkable" physical examination by John D. Cook, D.O., EMG testing which showed no acute radiculopathy (Tr. at 258) and unimpressive physical findings related to Claimant's neck impairment. (Tr. at 35.) The ALJ explained that

> [a]lthough the claimant testified to extreme symptoms of constant pain in his back with extremely limited capacity for physical activity, there was no evidence of any disc herniation or spinal canal stenosis. Dr. Cook noted an unremarkable physical examination with no focal deficits. The claimant had good muscle strength with good flexion

> (Exhibit 7-F). The claimant complains of needle like pain in his legs; however, the EMG results did not show any acute radiculopathy (Exhibit 7-F). While the claimant has been diagnosed with cervical strain, physical findings are not that impressive. The objective findings and actual treatment history do not support the claimant's testimony of disabling symptoms and limitations.

(Tr. at 35.)

The ALJ acknowledged Claimant's allegation of a significant lung impairment. The ALJ reasoned that Claimant "testified that a physician told him that he had lungs of an 80 year old man. However, pulmonary function testing showed mild deficit. (Exhibit 12-F). The claimant's breathing capacity was normal (Exhibit 13-F). Therefore, the undersigned finds that the objective findings and degree of treatment do not support the extreme limitations as alleged in regard to a lung problem." (Tr. at 35.) Regarding Claimant's allegation of daily headaches, the ALJ observed that while Claimant testified that he goes to bed two times per week, the treatment records do not support Claimant's testimony. Likewise, Claimant alleged significant angina that occurs three times a week. However, Dr. Cook opined that Claimant's chest pain was atypical and non-cardiac (Exhibit 7-F). The ALJ determined that inconsistencies such as these further weakened Claimant's credibility.

The ALJ further found that

> claimant showed extreme pain behavior by facial expressions and movements which appeared to be embellishments displayed to present himself as more

13

>limited than he really is.  The claimant reported that he needs help with his personal needs and grooming (Exhibit 5-E).  However, he testified that he takes care of his own personal needs.  The undersigned has concluded that the claimant has greatly minimized his activities of daily living, but there is no basis in the record for such restrictions. As to the effectiveness of treatment, the claimant's testimony would indicate complete failure of treatment.  However, the record reveals that the claimant is not receiving treatment for a number of his alleged impairments.  The claimant's alleged cardiac problem and depression are not supported by the treatment records or objective evidence.  Thus, the Administrative Law Judge has determined that the claimant's testimony concerning his impairments and their impact on his ability to work were out of proportion to the reported findings and lack of credibility (20 CFR 404.1529 and SSR 96-7p).

(Tr. at 35.)

Regarding the weight afforded the opinions of various medical sources of record, the ALJ provided a fairly superficial explanation of his findings. Regarding Dr. Cook, Claimant's treating physician, the ALJ explained that he rejected his opinion expressed in May of 2002, that Claimant would be a poor candidate for rehabilitation (Tr. at 237), because Dr. Cook's "objective findings and treatment records do not support this conclusion. Furthermore, medical source opinons [sic] are issues reserved to the Commissioner (SSR 96-5p)."  (Tr. at 37.)  The ALJ rejected the opinion of Dr. Carlson, who opined that Claimant would be unable to perform even sedentary work on a sustained basis, because Dr. Carlson's opinion was "inconsistent and not supported by the Claimant's treatment records" and because Dr. Carlson was a "one-time examining physician."  (Tr. at 37.)  The ALJ rejected the

14

opinion of Ms. Goudy, a vocational consultant who opined that Claimant would be unable to do any substantial gainful activity, because it was "not supported by the objective findings and treatment records" and because Ms. Goudy is not an acceptable medical source as that term is defined at 20 C.F.R. § 404.1513(d) (2004). Finally, regarding Dr. Shafer, another treating physician, the ALJ explained that her opinion of total disability "is inconsistent with the objective findings and not supported by treatment records." (Tr. at 37.)

The court finds that the ALJ failed to adequately explain his findings related to the weight afforded the opinions of treating and examining sources. The ALJ must give "good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2) (2004). Furthermore, the ALJ must comply with the applicable regulation, which requires the ALJ to consider every medical opinion in accordance with the factors set forth in 20 C.F.R. § 404.1527(d) (2004). Those factors include the (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors.

The ALJ's explanation for the weight afforded the opinions of Dr. Carlson, Dr. Cook, Dr. Shafer and Ms. Goudy do not provide adequate information from which the court can conclude that the

15

ALJ's decision is supported by substantial evidence. In this, a case wherein multiple treating physicians and examining physicians repeatedly opined that Claimant is limited to sedentary work or less, a finding that would mean Claimant meets the Medical-Vocational Guidelines, the ALJ should have provided a better explanation of his decision to reject this evidence.

Moreover, if the evidence had been properly weighed using the applicable regulation, the obvious conclusion is that substantial evidence supports a finding that Claimant is capable of sedentary work. As a result, at age fifty, he meets Rule 201.10 of the Medical-Vocational Guidelines. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 210.10 (2004). In evidence before the ALJ, both of Claimant's treating physicians, Dr. Cook and Dr. Shafer, opined that Claimant was capable of sedentary work or less and made it clear that they believed Claimant was effectively disabled. Their treatment notes contain objective evidence supporting such a finding. Though many of Dr. Cook's treatment notes are handwritten and difficult to read, they do reflect a worsening in Claimant's condition over time and consistently indicate tenderness and muscle spasm, positive straight leg findings and some positive neurological findings. (Tr. at 233-54.)

Moreover, Dr. Carlson, who actually saw Claimant more than once, contrary to the ALJ's finding, found that Claimant had some positive neurological findings, including decreased touch through

the lower left extremity and decreased pin sensation for the right thigh and left calf.  In addition, he found decreased vibration sense on the left.  He too opined that Claimant was disabled.  (Tr. at 283.)

Finally, Ms. Goudy, who often testifies as an impartial vocational expert in social security cases, opined that Claimant reads at a first grade level and that she believed Claimant minimized his illiteracy because he was ashamed of it.  (Tr. at 188.)  She further opined that in light of all the medical evidence of record, Claimant's vocational background and education level, he was disabled.  (Tr. at 192.)  Ms. Goudy's opinion is consistent with and supported by the functional capacity evaluation by Ms. Miller.  (Tr. at 196-200.)  Furthermore, Dr. Shafer expressed agreement with Ms. Goudy's report.  (Tr. at 289.)  Admittedly, Ms. Miller and Ms. Goudy are "other sources" as defined at 20 C.F.R. § 404.1513(d) (2004).  However, evidence from other sources may be used by the Commissioner in considering Claimant's case.  In this, a case where the other sources' findings are multiple and consistent with the opinions of treating and examining sources of record, they should have been afforded more weight by the ALJ.

In short, the substantial and overwhelming evidence of record supports a finding that Claimant is capable of sedentary work.  As a result, as of Claimant's fiftieth birthday, he meets Rule 201.10 of the Medical-Vocational Guidelines.  As of age fifty, Claimant is

an individual closely approaching advanced age, his education is limited or less as already found by the ALJ (Tr. at 386) and, as testified to by the vocational expert, his previous work experience is semiskilled, but his skills are not transferable (Tr. at 387). 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 210.10 (2004). As such, Rule 201.10 directs a finding of disabled.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Judgment on the Pleadings is DENIED, this matter is REVERSED and REMANDED for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) for the purpose of awarding benefits as outlined above and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to provide copies of this Order to all counsel of record.

ENTER: September 28, 2005

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge